# Exhibit A



Language Access

English ▼

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Past Proceedings

| | |
|---|---|
| CASE INFORMATION: | 26STCV17995 |
| Case Title: | ALASSANDRA FRANCO LOPEZ, ET AL. VS THE PROCTER & GAMBLE COMPANY, ET AL. |
| Filing Courthouse: | Stanley Mosk Courthouse |
| Filing Date: | 6/5/2026 |
| Case Type: | Product Liability (not asbestos or toxic/environmental) (General Jurisdiction) |
| Status: | Pending |

Click here to access document images for this case.

If this link fails, you may go to the Case Document Images site and search using the case number displayed on this page

🖨 Print        New Search

## FUTURE HEARINGS

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Past Proceedings

| | | | | |
|---|---|---|---|---|
| **9/8/2026** | 08:30 | Department 512 | 111 North Hill Street, Los Angeles, CA 90012 | Case Management Conference |

## PARTY INFORMATION

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Past Proceedings

| | |
|---|---|
| ASSAF MEHRNAZ | Plaintiff |
| C.B. FLEET COMPANY INC. | Defendant |
| CORDOVA STEPHANIE | Plaintiff |
| EDGEWELL PERSONAL CARE BRAND LLC | Defendant |
| ESSITY NORTH AMERICA INC. | Defendant |
| GALANG AUDRA | Plaintiff |
| GALARZA CINDY | Plaintiff |
| GALARZA SILVIA | Plaintiff |
| JALAL LIZA | Plaintiff |
| KIMBERLY CLARK CORPORATION | Defendant |
| LOPEZ ALASSANDRA FRANCO | Plaintiff |
| PRESTIGE CONSUMER HEALTHCARE INC. | Defendant |
| PROCTER & GAMBLE MANUFACTURING COMPANY | Defendant |
| THE HONEY POT COMPANY | Defendant |

| THE PROCTER & GAMBLE COMPANY | Defendant |
| TOVEG ISAAC | Attorney for Plaintiff |

## DOCUMENTS FILED

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Past Proceedings

| 6/10/2026 | Clerks Certificate of Service By Electronic Service | Filed by Clerk |
| 6/10/2026 | Notice of Case Management Conference | Filed by Clerk |
| 6/5/2026 | Alternative Dispute Resolution Packet | Filed by Clerk |
| 6/5/2026 | Civil Case Cover Sheet | Filed by Alassandra Franco Lopez (Plaintiff); Silvia Galarza (Plaintiff); Cindy Galarza (Plaintiff) et al. |
| 6/5/2026 | Complaint | Filed by Alassandra Franco Lopez (Plaintiff); Silvia Galarza (Plaintiff); Cindy Galarza (Plaintiff) et al. |
| 6/5/2026 | Notice of Case Assignment - Unlimited Civil Case | Filed by Clerk |
| 6/5/2026 | Summons on Complaint | Filed by Alassandra Franco Lopez (Plaintiff); Silvia Galarza (Plaintiff); Cindy Galarza (Plaintiff) et al. |

## PROCEEDINGS HELD

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Past Proceedings

## REGISTER OF ACTIONS

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Past Proceedings

| 6/10/2026 | Clerks Certificate of Service By Electronic Service; Filed by: Clerk; As to: Isaac Toveg (Attorney) |
| 6/10/2026 | Case Management Conference scheduled for 09/08/2026 at 08:30 AM in Stanley Mosk Courthouse at Department 512 |
| 6/10/2026 | Notice of Case Management Conference; Filed by: Clerk |
| 6/10/2026 | Notice of Case Management Conference; Filed by: Clerk |
| 6/9/2026 | Case assigned to Hon. Karine Mkrtchyan in Department 512 Stanley Mosk Courthouse |
| 6/5/2026 | Notice of Case Assignment - Unlimited Civil Case; Filed by: Clerk |
| 6/5/2026 | Alternative Dispute Resolution Packet; Filed by: Clerk |
| 6/5/2026 | Summons on Complaint; Issued and Filed by: Alassandra Franco Lopez (Plaintiff); Silvia Galarza (Plaintiff); Cindy Galarza (Plaintiff) et al. As to: The Procter & Gamble Company (Defendant); C.B. Fleet Company, Inc. (Defendant); Prestige Consumer Healthcare Inc. (Defendant) et al. |

6/5/2026    Civil Case Cover Sheet; Filed by: Alassandra Franco Lopez (Plaintiff); Silvia Galarza (Plaintiff); Cindy Galarza (Plaintiff) et al. As to: The Procter & Gamble Company (Defendant); C.B. Fleet Company, Inc. (Defendant); Prestige Consumer Healthcare Inc. (Defendant) et al.

6/5/2026    Complaint; Filed by: Alassandra Franco Lopez (Plaintiff); Silvia Galarza (Plaintiff); Cindy Galarza (Plaintiff) et al. As to: The Procter & Gamble Company (Defendant); C.B. Fleet Company, Inc. (Defendant); Prestige Consumer Healthcare Inc. (Defendant) et al.

[Back To Top](#)

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
**(AVISO AL DEMANDADO):**

THE PROCTER & GAMBLE COMPANY, C.B. FLEET COMPANY, INC., PRESTIGE CONSUMER HEALTHCARE INC, ESSITY NORTH AMERICA INC, KIMBERLY CLARK COPORATION, EDGEWELL PERSONAL CARE BRAND LLC, THE HONEY POT COMPANY, PROCTER & GAMBLE MANUFACTURING COMPANY; AND DOES 1 THROUGH 50, INCLUSIVE

**YOU ARE BEING SUED BY PLAINTIFF:**
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**

Mehrnaz Assaf, An Individual; Audra Galang, An Individual;

ALASSANDRA FRANCO LOPEZ An Individual, SILVIA GALARZA An Individual, CINDY GALARZA An Individual, LIZA JALAL An Individual, STEPHANIE CORDOVA An Individual, AND ROES 1-50

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

Electronically FILED by
Superior Court of California,
County of Los Angeles
6/05/2026 3:39 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By A. Villchis-David, Deputy Clerk

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
(El nombre y dirección de la corte es):

111 North Hill St Los Angeles CA, 90012 Stanley Mosk Courthouse

CASE NUMBER:
(Número del Caso)

26STCV17995

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
2600 W Olive Ave Suite 576 Burbank CA 901505/Isaac Toveg 818-333-5202/ Law Office Of Isaac Toveg PLC

DATE: 06/05/2026   David W. Slayton, Executive Officer/Clerk of Court   A. Villchis-David, Deputy
(Fecha)                                        (Secretario)                                            (Adjunto)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☐ on behalf of (specify):

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other (specify):
4. ☐ by personal delivery on (date):

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

For your protection and privacy, please press the Clear
This Form button after you have printed the form.

[ Print this form ] [ Save this form ]          [ Clear this form ]

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF LOS ANGELES**<br><br>COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012<br><br>**NOTICE OF CASE ASSIGNMENT**<br><br>**UNLIMITED CIVIL CASE** | Reserved for Clerk's File Stamp<br><br>**FILED**<br>Superior Court of California<br>County of Los Angeles<br><br>06/05/2026<br><br>David W. Slayton, Executive Officer / Clerk of Court<br><br>By: _____A. Villchis_____ Deputy |
| **Your case is assigned for all purposes to the judicial officer indicated below.** | CASE NUMBER:<br>26STCV17995 |

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|
| ✔ | Karine  Mkrtchyan | 512 | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record     David W. Slayton, Executive Officer / Clerk of Court

on 06/09/2026_____          By A. Villchis_____, Deputy Clerk
      (Date)

LACIV 190 (Rev 6/18)          **NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**
LASC Approved 05/06

### INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

#### APPLICATION
The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

#### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

#### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

#### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

#### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

#### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

#### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

#### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

#### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

#### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

#### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

Electronically FILED by
Superior Court of California,
County of Los Angeles
6/05/2026 3:39 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By A. Villchis-David, Deputy Clerk

LAW OFFICES OF ISAAC TOVEG PLC
Isaac Toveg SBN269729
2600 West Olive Avenue, 5th Floor
Burbank, California 91505
Telephone No.: (818) 333-5202
Facsimile No.: (818) 333-5203
Email: Isaactoveg@aol.com

Attorney for: PLAINTIFFS ALASSANDRA FRANCO LOPEZ, An Individual, SILVIA GALARZA, An Individual, CINDY GALARZA, An Individual, LIZA JALAL, An Individual, STEPHANIE CORDOVA, An Individual, MEHRNAZ ASSAF AN INDIVIDUAL, AUDRA GALNG AN INDIVIDUAL  AND ROES 1-50

# SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF LOS ANGELES

| | |
|---|---|
| ALASSANDRA FRANCO LOPEZ An Individual, SILVIA GALARZA An Individual, CINDY GALARZA An Individual, LIZA JALAL An Individual, STEPHANIE CORDOVA An Individual, MEHRNAZ ASSAF AN INDIVIDUAL, AUDRA GALANG, AN INDIVIDUAL AND ROES 1-50 <br><br> Plaintiffs, <br><br> vs. <br><br> THE PROCTER & GAMBLE COMPANY, C.B. FLEET COMPANY, INC., PRESTIGE CONSUMER HEALTHCARE INC, ESSITY NORTH AMERICA INC, KIMBERLY CLARK COPORATION, EDGEWELL PERSONAL CARE BRAND LLC, THE HONEY POT COMPANY, PROCTER & GAMBLE MANUFACTURING COMPANY; AND DOES 1 THROUGH 50, INCLUSIVE <br><br> Defendants | Case No.:  26STCV17995 <br><br> COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL <br> 1. STRICT PRODUCTS LIABILITY-FAILURE TO WARN <br> 2. STRICT PRODUCTS LIABILITY-DESIGN DEFECT <br> 3. BREACH OF IMPLIED WARRANTY <br> 4. BREACH OF EXPRESS WARRANTY <br> 5. FRAUDULENT CONCEALMENT <br> 6. FRAUD <br> 7. NEGLIGENT MISREPRESENTATION <br> 8. NEGLIGENCE |

Plaintiffs ALASSANDRA FRANCO LOPEZ An Individual;  SILVIA GALARZA An Individual; CINDY GALARZA An Individual; LIZA JALAL An Individual; STEPHANIE CORDOVA An Individual; Mehrnaz Assaf, An Individual; AUFRA GALNG An Individual AND ROES 1-50 ("PLAINTIFFS"), alleges against THE PROCTER &  GAMBLE COMPANY, C.B.

PLAINTIFFS COMPLAINT

FLEET COMPANY, INC., PRESTIGE CONSUMER HEALTHCARE INC, ESSITY NORTH AMERICA INC, KIMBERLY CLARK COPORATION, EDGEWELL PERSONAL CARE BRAND LLC, THE HONEY POT COMPANY, PROCTER & GAMBLE MANUFACTURING COMPANY; and DOES 1 through 50, inclusive (collectively referred to herein as "DEFENDANTS") as follows;

**NATURE OF THE ACTION**

1. This is a products liability, negligence, toxic exposure, and failure-to-warn action arising from PLAINTIFFS' use of feminine hygiene and personal care products, including tampons, sanitary pads, feminine washes, wipes, menstrual underwear, deodorizing sprays, and women's incontinence products manufactured, marketed, distributed, and sold by DEFENDANTS.

2. PLAINTIFFS allege that DEFENDANTS knowingly and/or negligently manufactured, designed, tested, marketed, and sold products containing dangerous toxic chemicals and contaminants, including but not limited to PFAS ("forever chemicals"), endocrine-disrupting chemicals, carcinogens, fragrances, preservatives, and other hazardous substances capable of causing reproductive harm, hormonal disruption, gynecological injuries, irritation, inflammation, and other serious bodily injuries.

3. PLAINTIFFS further allege that DEFENDANTS failed to adequately warn consumers of the known and foreseeable risks associated with repeated exposure and intimate use of said products, while falsely marketing such products as safe, clean, natural, organic, gentle, and suitable for feminine use.

4. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered injuries and damages, including bodily injury, emotional distress, medical expenses, reproductive harm, pain and suffering, and other damages according to proof.

**PARTIES**

PLAINTIFFS are citizens of the State of California.

PLAINTIFFS purchased, used, and were exposed to feminine hygiene and personal care products manufactured, marketed, distributed, supplied, and/or sold by DEFENDANTS,

including but not limited to tampons, sanitary pads, feminine washes, vaginal cleansing products, wipes, menstrual underwear, deodorizing sprays, and women's incontinence products.

PLAINTIFFS reasonably relied upon DEFENDANTS' representations that said products were safe, clean, natural, organic, gentle, pH-balanced, and suitable for intimate feminine use.

PLAINTIFFS are informed and believes, and thereon alleges, that the products used contained dangerous toxic chemicals and contaminants including but not limited to PFAS ("forever chemicals"), endocrine-disrupting chemicals, carcinogens, volatile organic compounds, fragrances, preservatives, heavy metals, and other hazardous substances capable of causing bodily injury, reproductive harm, gynecological complications, hormonal disruption, irritation, inflammation, and other serious health consequences.

As a direct and proximate result of exposure to and use of DEFENDANTS' products, PLAINTIFFS suffered injuries and damages, including but not limited to physical injury, pain and suffering, emotional distress, medical expenses, reproductive and gynecological harm, fear of future illness, and other damages according to proof.

PLAINTIFFS are informed and believe that DEFENDANTS knew or reasonably should have known that the products at issue allegedly contained harmful toxic substances and posed foreseeable health risks to consumers, particularly women and young girls, yet failed to adequately warn consumers or disclose the true nature and dangers associated with repeated exposure and intimate use of said products.

PLAINTIFFS are informed and believe, and thereon allege, that DEFENDANTS intentionally and/or negligently concealed material facts regarding the safety, chemical composition, and health risks associated with their products while continuing to market and sell such products to the public for profit.

Defendant THE PROCTER & GAMBLE COMPANY ("P&G") is, and at all relevant times was, an Ohio corporation with its principal place of business located at One Procter & Gamble Plaza, Cincinnati, Ohio 45202. Plaintiff is informed and believes that P&G designed, manufactured, tested, marketed, distributed, and sold feminine hygiene products, including, but not limited to, Always®, Tampax®, Always Discreet®, and L. Organic® products throughout California and the United States.

Defendant PROCTER & GAMBLE MANUFACTURING COMPANY is, and at all relevant times was, an Ohio corporation with its principal place of business located in Cincinnati, Ohio. Plaintiff is informed and believes that said Defendant participated in the manufacturing, formulation, testing, packaging, distribution, and sale of feminine hygiene and personal care products at issue in this action.

Defendant PRESTIGE CONSUMER HEALTHCARE INC. is a Delaware corporation with its principal place of business located at 660 White Plains Road, Tarrytown, New York 10591. Plaintiff is informed and believes that said Defendant manufactures, markets, distributes, and sells Summer's Eve® feminine hygiene products, including feminine washes, wipes, sprays, and related products.

Defendant C.B. FLEET COMPANY, INC. is a corporation doing business throughout the United States and is a subsidiary and/or affiliated entity involved in the manufacture, distribution, and sale of Summer's Eve® products. Plaintiff is informed and believes that said Defendant participated in the development, manufacturing, testing, marketing, and sale of the products at issue.

Defendant ESSITY NORTH AMERICA INC. is a corporation authorized to conduct business in California with corporate offices located at 2929 Arch Street, Suite 2600, Philadelphia, Pennsylvania 19104. Plaintiff is informed and believes that said Defendant manufactured, marketed, distributed, and sold personal care and hygiene products throughout the United States.

Defendant KIMBERLY-CLARK CORPORATION is a Delaware corporation with its principal place of business located at 351 Phelps Drive, Irving, Texas 75038. Plaintiff is informed and believes that said Defendant manufactures, markets, distributes, and sells Kotex® and Poise® feminine hygiene and incontinence products throughout California and the United States.

Defendant EDGEWELL PERSONAL CARE COMPANY is a Missouri corporation with its principal place of business located at 6 Research Drive, Shelton, Connecticut 06484. Plaintiff is informed and believes that said Defendant manufactures, markets, distributes, and sells Carefree® and Playtex® feminine hygiene products throughout California and the United States.

Defendant THE HONEY POT COMPANY is a corporation organized under the laws of the State of Georgia with its principal place of business located in Atlanta, Georgia. Plaintiff is informed and believes that said Defendant manufactures, markets, distributes, and sells feminine hygiene and intimate care products, including feminine washes, wipes, pads, tampons, and related products.

The true names and capacities of Defendants sued herein as DOES 1 through 50, inclusive, whether individual, corporate, partnership, associate, subsidiary, parent corporation, distributor, supplier, retailer, manufacturer, successor entity, or otherwise, are presently unknown to Plaintiffs, who therefore sue such Defendants by fictitious names pursuant to California Code of Civil Procedure section 474.

PLAINTIFFS are informed and believe, and thereon allege, that each DEFENDANT acted as the agent, servant, employee, alter ego, co-conspirator, joint ventures, parent, subsidiary, affiliate, successor, and/or representative of each remaining DEFENDANT and, in doing the things alleged herein, acted within the course and scope of such relationship and with the permission, consent, authorization, and ratification of the other DEFENDANTS.

## PLAINTIFFS' ALLEGATIONS

18. **PLAINTIFF ALASSANDRA FRANCO LOPEZ**, born on August 11, 2000, is an individual and citizen of the State of California. Plaintiff has used and been regularly exposed to feminine hygiene and intimate care products manufactured, marketed, distributed, and sold by DEFENDANTS, including but not limited to Always, L. Organic, Carefree, Summer's Eve, Honey Pot, and related feminine hygiene products for approximately fourteen (14) years. Plaintiff reasonably relied upon DEFENDANTS'

representations and marketing that said products were safe, clean, natural, organic, gentle, and appropriate for prolonged feminine and intimate use. PLAINTIFF is informed and believes, and thereon alleges, that said products contained dangerous, toxic chemicals and contaminants, including but not limited to PFAS ("forever chemicals"), endocrine-disrupting chemicals, carcinogens, fragrances, preservatives, volatile organic compounds, and other hazardous substances capable of causing serious reproductive and gynecological harm. As a direct and proximate result of prolonged exposure to and repeated use of DEFENDANTS' products, PLAINTIFF has suffered severe and life-altering injuries and medical conditions including but not limited to Endometriosis, ovarian cysts, Polycystic Ovary Syndrome ("PCOS"), fibroids, hormonal imbalance, pelvic inflammatory disease, anemia, painful bowel movements, pain during intercourse, chronic heavy bleeding, severe and painful menstrual cycles, chronic ovarian and uterine pain, inflammation, fatigue, emotional distress, and ongoing reproductive complications that have substantially interfered with PLAINTIFF'S daily life, physical well-being, emotional health, ability to work, ability to walk or get up due to the excruciating pain, personal relationships, and overall quality of life. PLAINTIFF further suffered the devastating loss of a pregnancy through miscarriage, which PLAINTIFF is informed and believes was caused or substantially contributed to by the reproductive and gynecological injuries she sustained. PLAINTIFF has endured debilitating pelvic and reproductive pain for over ten (10) years and underwent laparoscopic surgery in or around 2022 due to severe Endometriosis and related complications. Despite surgical intervention, PLAINTIFF continues to experience chronic pain and worsening symptoms. On or about May 1, 2026, PLAINTIFF was hospitalized due to severe chronic pain affecting her uterus and ovaries and was informed by medical providers that her Endometriosis had progressed and spread further throughout her reproductive system. PLAINTIFF was further advised that she may face difficulty conceiving and carrying children in the future and was warned that she should attempt to conceive within approximately one (1) to two (2) years due to the progression and severity of her condition. PLAINTIFF was additionally informed that she will likely require further surgical intervention as a result of the continued spread of Endometriosis and related reproductive damage. PLAINTIFF has suffered tremendous physical pain, emotional anguish, mental suffering, fear, anxiety, humiliation, loss of enjoyment of life, medical expenses, future medical treatment, reproductive harm, and other economic and non-economic damages according to proof. PLAINTIFF continues to suffer daily and will continue to suffer such

damages into the future as a direct and proximate result of DEFENDANTS' wrongful conduct, negligence, failure to warn, concealment, and distribution of products alleged to contain dangerous, toxic chemicals and harmful substances.

19. **PLAINTIFF SILVIA GALARZA,** born on January 9, 1997, is, and at all relevant times mentioned herein was, an individual and citizen of the State of California. PLAINTIFF has used and been repeatedly exposed to feminine hygiene and intimate care products manufactured, marketed, distributed, and sold by DEFENDANTS, including but not limited to Always, Poise, Tampax, Playtex, menstrual cups, and Summer's Eve vaginal cleansing products for approximately fourteen (14) years, including Summer's Eve feminine wash products weekly for approximately nine (9) years. PLAINTIFF reasonably relied upon DEFENDANTS' representations that said products were safe and suitable for prolonged feminine and intimate use. As a direct and proximate result of DEFENDANTS' negligence, wrongful conduct, failure to warn, and distribution of products alleged to contain PFAS ("forever chemicals"), endocrine-disrupting chemicals, carcinogens, fragrances, preservatives, and other toxic substances, PLAINTIFF has suffered severe and ongoing injuries and medical conditions including but not limited to Adenomyosis, ovarian cysts, chronic pelvic pain, severe and painful menstrual cycles, anemia, excessive and heavy bleeding, inflammation, hormonal complications, emotional distress, and other reproductive and gynecological injuries. PLAINTIFF'S condition has substantially interfered with her daily life, emotional well-being, physical health, and quality of life. PLAINTIFF has sought emergency medical treatment on numerous occasions due to the severity of her symptoms and chronic pain and was prescribed hormonal birth control in attempts to manage and alleviate her pain and medical complications; however, despite treatment efforts, PLAINTIFF continues to suffer persistent pain, reproductive complications, emotional anguish, medical expenses, and ongoing damages according to proof.

20. **PLAINTIFF CINDY GALARZA,** born on April 17, 1999, is, and at all relevant times mentioned herein was, an individual and citizen of the State of California. PLAINTIFF has used feminine hygiene and intimate care products manufactured, marketed, distributed, and

sold by DEFENDANTS, including but not limited to Always, L. Organic, Kotex, Tampax, Playtex, sanitary pads, tampons, and related feminine hygiene products for many years. PLAINTIFF reasonably relied upon DEFENDANTS' representations that said products were safe, gentle, natural, and suitable for prolonged intimate feminine use. As a direct and proximate result of DEFENDANTS' negligence, wrongful conduct, failure to warn, concealment, and distribution of products alleged to contain PFAS ("forever chemicals"), endocrine-disrupting chemicals, carcinogens, fragrances, preservatives, and other dangerous toxic substances, PLAINTIFF has suffered severe and ongoing reproductive and gynecological injuries including but not limited to chronic painful menstrual cycles, excessive and heavy menstrual bleeding, hormonal imbalance, pelvic inflammatory disease, chronic pelvic pain, severe inflammation, blood clots, painful bowel movements, emotional distress, and other bodily injuries according to proof. PLAINTIFF'S symptoms and medical complications have substantially interfered with her daily life, physical well-being, emotional health, education, employment, and overall quality of life. PLAINTIFF has missed countless days of work and school due to debilitating pain, excessive bleeding, and chronic symptoms. PLAINTIFF has further suffered embarrassment, humiliation, and economic loss as a result of damaging personal property, including but not limited to mattresses, clothing, work chairs, vehicle seats, and other personal belongings, caused by uncontrollable bleeding and related medical complications. PLAINTIFF has sought emergency medical treatment on multiple occasions due to the severity of her condition and has been prescribed hormonal birth control in efforts to alleviate and manage her symptoms; however, said treatments failed to relieve her pain and suffering adequately, and PLAINTIFF continues to suffer ongoing physical pain, reproductive harm, emotional anguish, medical expenses, and other damages according to proof.

21. **PLAINTIFF LIZA JALAL,** born on March 2, 2001, is, and at all relevant times mentioned herein was, an individual and citizen of the State of California. PLAINTIFF has used and been repeatedly exposed to feminine hygiene and intimate care products manufactured, marketed, distributed, and sold by DEFENDANTS, including but not limited to Always sanitary pads, Tampax tampons, feminine pads, and Summer's Eve vaginal cleansing products on a regular and frequent basis for approximately ten (10) to thirteen (13) years. PLAINTIFF reasonably relied upon DEFENDANTS' representations that said products

were safe, gentle, and suitable for prolonged feminine and intimate use. As a direct and proximate result of DEFENDANTS' negligence, wrongful conduct, failure to warn, concealment, and distribution of products alleged to contain PFAS ("forever chemicals"), endocrine-disrupting chemicals, carcinogens, fragrances, preservatives, and other toxic substances, PLAINTIFF has suffered severe and ongoing reproductive and gynecological injuries including but not limited to ovarian cysts, chronic pelvic pain, anemia, excessive blood clots, inflammation, hormonal complications, painful menstrual cycles, and other bodily injuries according to proof. PLAINTIFF further suffered the devastating loss of a pregnancy through miscarriage, which PLAINTIFF is informed and believes was caused or substantially contributed to by the reproductive and gynecological injuries she sustained. PLAINTIFF has sought emergency medical treatment on numerous occasions due to the severity of her symptoms and chronic pain. Additionally, PLAINTIFF experiences pain during sexual intercourse, which has negatively affected her personal relationships, emotional well-being, intimacy, and overall quality of life. PLAINTIFF'S medical conditions and ongoing symptoms have substantially interfered with her daily activities, employment, emotional health, future family planning, and ability to live a normal and pain-free life. PLAINTIFF continues to suffer physical pain, emotional anguish, mental suffering, medical expenses, reproductive harm, loss of enjoyment of life, and other economic and non-economic damages according to proof, all of which were foreseeable consequences of DEFENDANTS' conduct.

22. **PLAINTIFF STEPHANIE CORDOVA**, born on May 25, 2000, is, and at all relevant times mentioned herein was, an individual and citizen of the State of California. PLAINTIFF has used and been repeatedly exposed to feminine hygiene and intimate care products manufactured, marketed, distributed, and sold by DEFENDANTS, including but not limited to Always sanitary pads, Tampax tampons, feminine pads, tampons, Summer's Eve feminine hygiene products, for approximately thirteen (13) years. PLAINTIFF reasonably relied upon DEFENDANTS' representations that such products were safe, effective, and suitable for prolonged feminine and intimate use. As a direct and proximate result of DEFENDANTS' negligence, wrongful conduct, failure to warn, concealment, and distribution of products alleged to contain PFAS ("forever chemicals"), endocrine-disrupting chemicals, carcinogens, fragrances, preservatives, and other toxic substances, PLAINTIFF

has suffered severe and ongoing reproductive and gynecological injuries including but not limited to painful menstrual cycles, excessive and heavy menstrual bleeding, hormonal imbalance, blood clots, pelvic inflammatory disease, chronic pelvic pain, painful bowel movements, pain during sexual intercourse, inflammation, and other bodily injuries according to proof. PLAINTIFF'S medical conditions have substantially interfered with her daily activities, physical mobility, employment, education, personal relationships, and overall quality of life. PLAINTIFF has missed numerous days of work and school due to debilitating pain, excessive bleeding, and chronic symptoms, resulting in financial hardship and lost income. As a single mother, PLAINTIFF faces additional challenges because her inability to work consistently directly impacts her ability to provide for herself and her child. PLAINTIFF has also suffered severe emotional distress, anxiety, depression, mental anguish, fear, frustration, and loss of enjoyment of life as a result of her ongoing medical conditions. On many occasions, PLAINTIFF'S pain has become so severe that it has limited her ability to walk, stand, perform routine daily tasks, care for her child, and engage in normal activities. Plaintiff continues to suffer physical pain, emotional suffering, economic damages, medical expenses, reproductive harm, and other general and special damages according to proof, all of which were foreseeable consequences of DEFENDANTS'

23. **PLAINTIFF MEHRNAZ ASSAF**, born on **December 17, 1964**, began experiencing severe gynecological and reproductive health complications at approximately 18 years of age. Throughout her life, she regularly used feminine hygiene and personal care products manufactured, marketed, and sold by various companies, including Always, Kotex, Carefree, and Summer's Eve, including sanitary pads and feminine cleansing products. Over the course of several decades, Ms. Assaf suffered from chronic and debilitating reproductive health conditions, including endometriosis, ovarian cysts, uterine cysts, fibroids, and ultimately ovarian cancer. As a result of these conditions, she endured severe pelvic pain, pelvic inflammation, abnormal uterine bleeding, excessive blood loss, blood clots, painful intercourse, chronic discomfort, emotional distress, and significant impairment to her daily life and overall well-being. Ms. Assaf underwent numerous medical evaluations, treatments, and emergency room visits due to the severity of her symptoms. She underwent two major surgeries related to her reproductive conditions, one in the United States and another in Iran. Despite these interventions, her condition continued to deteriorate, ultimately requiring a

hysterectomy at the age of 33. As a direct consequence of her reproductive injuries and the removal of her reproductive organs, Ms. Assaf was permanently deprived of the ability to bear children, causing profound emotional pain, mental anguish, and loss of life's opportunities. The physical, emotional, and financial burdens resulting from these conditions have affected every aspect of her life for decades. Ms. Assaf alleges that the manufacturers, distributors, and sellers of these feminine hygiene and personal care products failed to adequately test, study, monitor, and warn consumers regarding the presence of harmful chemicals, including per- and polyfluoroalkyl substances ("PFAS") and other toxic substances. She contends that these companies knew or should have known of the risks associated with prolonged exposure to such chemicals and negligently concealed or failed to disclose those dangers to consumers. As a result of Defendants' conduct, Ms. Assaf has suffered severe and permanent injuries, extensive medical treatment, loss of fertility, pain and suffering, emotional distress, and other damages, all of which continue to affect her to this day. She seeks compensation for the significant harms caused by Defendants' negligence, misconduct, and failure to protect consumers from dangerous and defective.

24. **PLAINTIFF AUDRA GALANG**, born on **March 24, 1945**, has suffered from significant gynecological and reproductive health complications throughout her adult life. For many years, Ms. Galang regularly used feminine hygiene products, including sanitary pads manufactured, marketed, and sold by companies such as Always and Kotex. Over time, Ms. Galang developed numerous serious reproductive health conditions, including endometriosis, uterine fibroids, pelvic inflammatory disease, and severe painful menstrual cycles. She experienced chronic pelvic pain, excessive menstrual bleeding, inflammation, cramping, discomfort, and other debilitating symptoms that negatively affected her quality of life, daily activities, and overall health. As a result of the progression and severity of her conditions, Ms. Galang required extensive medical treatment and surgical intervention. She underwent an appendectomy after experiencing severe abdominal and pelvic pain and later required a hysterectomy due to the worsening of her reproductive health conditions and ongoing gynecological complications. Throughout her life, Ms. Galang endured years of physical pain, emotional distress, medical expenses, and suffering associated with these conditions. She alleges that her prolonged exposure to harmful chemicals, including per- and polyfluoroalkyl substances ("PFAS") and other toxic substances contained in feminine

hygiene products, substantially contributed to or caused her reproductive injuries and related medical conditions. Ms. Galang further alleges that the manufacturers, distributors, and sellers of these products failed to adequately test their products, investigate the health risks associated with long-term exposure to PFAS and other harmful chemicals, and provide proper warnings to consumers. Had she been adequately informed of these risks, she would not have purchased or used these products. As a direct and proximate result of Defendants' negligence, misconduct, and failure to warn consumers, Ms. Galang has suffered severe and permanent injuries, physical pain, emotional distress, medical expenses, loss of enjoyment of life, and other economic and non-economic damages. She seeks full compensation for all injuries and losses resulting from Defendants' conduct.

## **VENUE AND JURISDICTION**

25. This Court has jurisdiction over this action pursuant to Article VI, Section 10 of the California Constitution and California Code of Civil Procedure section 410.10 because the amount in controversy exceeds the jurisdictional minimum of this Court and because Plaintiffs seek damages according to proof arising from Defendants' wrongful conduct, negligence, strict products liability, failure to warn, fraudulent concealment, and other causes of action alleged herein.

26. This Court has personal jurisdiction over Defendants because Defendants have purposefully availed themselves of the privileges and benefits of conducting business within the State of California by manufacturing, designing, testing, marketing, advertising, distributing, supplying, and selling feminine hygiene and personal care products throughout California. Defendants have derived substantial revenue from the sale of their products within California and reasonably could anticipate being haled into a California court for injuries caused by those products.

27. Venue is proper in this Court pursuant to California Code of Civil Procedure sections 395 and 395.5 because Plaintiffs reside in the State of California, a substantial portion of the events and injuries giving rise to this action occurred within California, Defendants regularly

conduct business within California, and the products at issue were marketed, distributed, sold, purchased, and used within this State.

28. Plaintiffs are informed and believe, and thereon allege, that Defendants, and each of them, have continuously transacted business within California, have marketed and sold the products at issue to California consumers, and have committed acts and omissions within this State that caused and contributed to Plaintiffs' injuries and damages.

29. Venue is further proper in this County because one or more Plaintiffs reside in this County, received medical treatment in this County, purchased and used Defendants' products in this County, and suffered injuries and damages within this County as a direct and proximate result of Defendants' conduct.

## FACTUAL ALLEGATIONS

28. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

29. For decades, Defendants have designed, manufactured, tested, marketed, advertised, distributed, supplied, and sold feminine hygiene and intimate care products throughout the United States, including California. These products include, but are not limited to, sanitary pads, tampons, menstrual cups, feminine wipes, vaginal cleansing products, deodorizing sprays, feminine washes, incontinence products, and related personal care products marketed specifically to women and young girls.

30. Plaintiffs are informed and believe, and thereon allege, that many of Defendants' products contained dangerous substances and contaminants including but not limited to PFAS ("forever chemicals"), endocrine-disrupting chemicals, carcinogens, volatile organic compounds, heavy metals, fragrances, preservatives, and other toxic chemicals capable of causing reproductive harm, hormonal disruption, gynecological injuries, inflammation, fertility complications, and other serious adverse health effects.

31. PFAS chemicals are commonly referred to as "forever chemicals" because they do not readily break down within the human body or environment and may accumulate over time. Plaintiffs are informed and believe that repeated exposure to such substances through prolonged use of intimate and feminine hygiene products may result in increased exposure to toxic chemicals through highly absorbent areas of the body.

32. At all relevant times, Defendants knew or reasonably should have known through scientific literature, internal testing, industry studies, consumer complaints, regulatory investigations,

PLAINTIFFS COMPLAINT

toxicological data, and available medical research that the products they manufactured and sold allegedly posed foreseeable risks to consumers.

33. Despite such knowledge, Defendants failed to adequately test their products for long-term safety, failed to disclose the presence of potentially harmful chemicals, failed to provide adequate warnings regarding health risks, failed to conduct proper safety monitoring, and failed to take reasonable steps to protect consumers from foreseeable harm.

34. Instead, Defendants marketed and represented their products as safe, gentle, clean, natural, organic, pH-balanced, dermatologist-tested, gynecologist-approved, and suitable for prolonged intimate use, thereby inducing consumers, including Plaintiffs, to purchase and use such products on a regular basis for many years.

35. Plaintiffs reasonably relied upon Defendants' marketing, labeling, representations, warranties, and omissions when selecting and using Defendants' products.

36. Plaintiffs used Defendants' products in the manner intended and reasonably foreseeable by Defendants and were exposed to the products repeatedly over extended periods of time.

37. As a direct and proximate result of their exposure to and use of Defendants' products, Plaintiffs suffered serious injuries and damages including but not limited to endometriosis, adenomyosis, ovarian cysts, fibroids, polycystic ovary syndrome (PCOS), hormonal imbalance, pelvic inflammatory disease, chronic pelvic pain, severe menstrual pain, excessive bleeding, blood clots, anemia, painful bowel movements, infertility concerns, miscarriage, pain during intercourse, emotional distress, anxiety, depression, medical expenses, lost income, loss of earning capacity, and other damages according to proof.

38. Plaintiffs have undergone extensive medical treatment, emergency room visits, diagnostic testing, medication management, hormonal therapy, birth control treatment, surgical procedures, and other medical interventions in an effort to diagnose and treat their injuries and symptoms.

39. Plaintiffs continue to suffer physical pain, emotional distress, reproductive harm, economic loss, and diminished quality of life and are informed and believe that they may require future medical treatment, monitoring, and surgical intervention as a result of the injuries alleged herein.

40. Plaintiffs are informed and believe, and thereon allege, that Defendants placed profits over consumer safety by continuing to market and sell their products without adequately warning consumers of the alleged risks associated with prolonged exposure to toxic chemicals contained therein.

41. As a direct and proximate result of Defendants' acts, omissions, negligence, concealment, misrepresentations, and failure to warn, Plaintiffs have suffered and continue to suffer damages in an amount to be proven at trial.

## DELAYED DISCOVERY AND FRAUDULENT CONCEALMENT

42. Plaintiffs did not discover, and through the exercise of reasonable diligence could not have discovered, the nature, cause, and extent of their injuries and damages until recently, when information concerning the presence of PFAS ("forever chemicals"), endocrine-disrupting chemicals, carcinogens, and other harmful substances in feminine hygiene and intimate care products became publicly available through scientific studies, consumer investigations, regulatory findings, media reports, and litigation involving similar products.

43. At all relevant times, Defendants possessed superior and exclusive knowledge regarding the chemical composition of their products, including information obtained through internal testing, research, toxicological studies, consumer complaints, adverse event reports, scientific literature, and other data unavailable to Plaintiffs.

44. Plaintiffs are informed and believe, and thereon allege, that Defendants knew or reasonably should have known that their products contained potentially harmful substances capable of causing reproductive injuries, hormonal disruption, gynecological complications, chronic pain conditions, fertility issues, inflammation, and other serious health consequences, yet intentionally failed to disclose such information to consumers.

45. Rather than warn consumers of the known and foreseeable risks associated with prolonged exposure and intimate use of their products, Defendants actively concealed, suppressed, omitted, misrepresented, and failed to disclose material facts concerning the safety of their products while simultaneously marketing and advertising the products as safe, natural, organic, gentle, pH balanced, dermatologist tested, gynecologist approved, and suitable for everyday feminine use.

46. Plaintiffs reasonably relied upon Defendants' representations, omissions, advertisements, packaging, labeling, warranties, and marketing materials and had no reason to suspect that products specifically designed for intimate feminine use allegedly contained harmful toxic substances capable of causing serious reproductive and gynecological injuries.

47. Due to Defendants' fraudulent concealment, misrepresentations, omissions, and failure to disclose material facts, Plaintiffs were prevented from discovering the true cause of their injuries and damages at an earlier date.

48. Plaintiffs are informed and believe that Defendants intentionally concealed material information in order to maximize profits, maintain market share, avoid regulatory scrutiny, avoid product recalls, and prevent consumers from learning the true risks associated with the products.

49. Plaintiffs did not discover, and could not reasonably have discovered, the connection between Defendants' products and their injuries until after receiving medical treatment, reviewing scientific and medical information, and learning of allegations, investigations, studies, and litigation concerning the presence of toxic chemicals in feminine hygiene and intimate care products.

50. Accordingly, any applicable statute of limitations is tolled pursuant to the discovery rule, equitable tolling principles, and the doctrine of fraudulent concealment because Defendants' wrongful conduct prevented Plaintiffs from discovering the facts underlying their claims despite the exercise of reasonable diligence.

51. As a direct and proximate result of Defendants' fraudulent concealment, misrepresentations, omissions, and failure to warn, Plaintiffs suffered substantial physical injuries, reproductive harm, emotional distress, medical expenses, economic damages, and other losses according to proof.

## FIRST CAUSE OF ACTION
**(BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS and DOES 1 through 50, inclusive)**
**STRICT PRODUCTS LIABILITY- FAILURE TO WARN**

52. Plaintiff realleges paragraphs and incorporates by reference each and every allegation contained in this Complaint as though fully set forth herein.

53. At all relevant times, Defendants, and each of them, designed, researched, developed, formulated, manufactured, tested, inspected, labeled, marketed, advertised, promoted, distributed, supplied, and sold feminine hygiene and intimate care products, including but not limited to sanitary pads, tampons, menstrual cups, feminine wipes, vaginal cleansing products, feminine washes, deodorizing sprays, menstrual underwear, and related products used by Plaintiffs.

54. Plaintiffs are informed and believe, and thereon allege, that the products manufactured, marketed, and sold by Defendants were defective and unreasonably dangerous when they left Defendants' possession and control because they allegedly contained PFAS ("forever chemicals"), endocrine-disrupting chemicals, carcinogens, heavy metals, volatile organic

compounds, fragrances, preservatives, and other toxic substances capable of causing serious bodily injury, reproductive harm, gynecological injuries, hormonal disruption, fertility complications, inflammation, chronic pain conditions, and other adverse health effects.

55. Defendants knew or reasonably should have known that consumers would use the products repeatedly, continuously, and directly on highly absorbent and sensitive areas of the body, thereby increasing the risk of chemical absorption and prolonged exposure.

56. Defendants failed to adequately warn Plaintiffs and other consumers regarding the nature, presence, extent, and severity of the risks associated with exposure to the toxic chemicals allegedly contained within their products.

57. Defendants further failed to provide adequate instructions, disclosures, warnings, contraindications, or precautions concerning the foreseeable health risks associated with long-term and repeated use of their products.

58. Plaintiffs used Defendants' products in a manner that was intended, foreseeable, and reasonably anticipated by Defendants.

59. Plaintiffs were unaware of the dangerous conditions associated with Defendants' products and reasonably relied upon Defendants' representations, advertising, labeling, packaging, warranties, and omissions indicating that the products were safe for feminine and intimate use.

60. The risks associated with the products outweighed any alleged utility or benefit because safer alternative designs, ingredients, formulations, manufacturing methods, and warning systems were available to Defendants at all relevant times.

61. As a direct and proximate result of Defendants' defective products and failure to provide adequate warnings, Plaintiffs suffered severe and permanent injuries and damages including but not limited to endometriosis, adenomyosis, ovarian cysts, fibroids, PCOS, hormonal imbalance, pelvic inflammatory disease, chronic pelvic pain, severe menstrual pain, excessive bleeding, blood clots, anemia, fertility complications, miscarriage, pain during intercourse, emotional distress, anxiety, depression, medical expenses, lost earnings, loss of earning capacity, pain and suffering, and other damages according to proof.

62. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered and will continue to suffer general damages, special damages, economic damages, non-economic damages, medical expenses, future medical expenses, future medical monitoring costs, loss of enjoyment of life, emotional distress, and other damages according to proof at trial.

63. Plaintiffs are informed and believe, and thereon allege, that Defendants acted with conscious disregard for the safety of consumers by continuing to manufacture, market, advertise, distribute, and sell the products despite knowledge of the risks associated with the toxic substances allegedly contained therein, thereby entitling Plaintiffs to recover punitive and exemplary damages in an amount sufficient to punish Defendants and deter similar misconduct.

## SECOND CAUSE OF ACTION

**(BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS and DOES 1 through 50, inclusive)**
**STRICT PRODUCTS LIABILITY- DESIGN DEFECT**

64. Plaintiffs reallege and incorporate by reference each and every allegation contained in this Complaint as though fully set forth herein.

65. Plaintiffs are informed and believe, and thereon allege, that Defendants designed, manufactured, formulated, tested, marketed, distributed, and sold feminine hygiene and intimate care products that were defectively designed and unreasonably dangerous for their intended and foreseeable use.

66. Plaintiffs are informed and believe that the products at issue contained PFAS ("forever chemicals"), endocrine-disrupting chemicals, carcinogens, fragrances, preservatives, volatile organic compounds, heavy metals, and other toxic substances that rendered the products unsafe for prolonged and repeated use in intimate areas of the body.

67. The products were defectively designed because the foreseeable risks of harm associated with the products exceeded any alleged benefits, and safer alternative designs, materials, formulations, and manufacturing methods were available to Defendants at the time the products were manufactured and sold.

68. As a direct and proximate result of the defective design of Defendants' products, Plaintiffs suffered severe reproductive injuries, gynecological complications, hormonal disruption, chronic pain, emotional distress, medical expenses, loss of enjoyment of life, and other damages according to proof.

69. Plaintiffs therefore seek all available damages and relief permitted by law.

## THIRD CAUSE OF ACTION

**(BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS and DOES 1 through 50, inclusive)**
**BREACH OF IMPLIED WARRANTY**

75. Plaintiffs reallege and incorporate by reference each and every allegation contained in this Complaint as though fully set forth herein.

76. At all relevant times, Defendants were engaged in the business of designing, manufacturing, formulating, testing, marketing, distributing, supplying, and selling feminine hygiene and intimate care products, including but not limited to tampons, sanitary pads, menstrual cups, feminine wipes, vaginal cleansing products, feminine washes, deodorizing sprays, menstrual underwear, and related products.

77. Defendants impliedly warranted that the products at issue were merchantable, safe, fit for their ordinary and intended purpose, and suitable for use by consumers, including Plaintiffs.

78. Plaintiffs purchased and used Defendants' products in the manner intended and reasonably foreseeable by Defendants and reasonably relied upon Defendants' skill, judgment, marketing, labeling, packaging, representations, and implied warranties regarding the safety and suitability of the products.

79. Plaintiffs are informed and believe, and thereon allege, that the products were not merchantable and were not fit for their ordinary intended purpose because they allegedly contained PFAS ("forever chemicals"), endocrine-disrupting chemicals, carcinogens, fragrances, preservatives, heavy metals, volatile organic compounds, and other harmful toxic substances capable of causing bodily injury, reproductive harm, gynecological complications, hormonal disruption, inflammation, fertility issues, chronic pain conditions, and other adverse health effects.

80. The products failed to perform safely as ordinary consumers would reasonably expect when used in an intended and foreseeable manner and therefore were not of merchantable quality.

81. Defendants breached the implied warranty of merchantability by placing into the stream of commerce products that were allegedly defective, unsafe, unfit for their intended purpose, and incapable of being used safely by consumers.

82. As a direct and proximate result of Defendants' breach of implied warranty, Plaintiffs suffered injuries and damages including but not limited to endometriosis, adenomyosis, ovarian cysts, fibroids, polycystic ovary syndrome (PCOS), hormonal imbalance, pelvic inflammatory disease, chronic pelvic pain, severe menstrual pain, excessive bleeding, blood clots, anemia, fertility complications, miscarriage, pain during intercourse, emotional distress, anxiety, depression, medical expenses, lost earnings, loss of earning capacity, pain and suffering, and other economic and non-economic damages according to proof.

83. As a further direct and proximate result of Defendants' conduct, Plaintiffs have incurred and will continue to incur medical expenses, future treatment costs, future medical monitoring expenses, economic losses, and other damages according to proof at trial.

84. Plaintiffs therefore seek all compensatory, consequential, incidental, general, special, equitable, and other damages available under California law, together with costs, interest, and such further relief as the Court deems just and proper.

## FOURTH CAUSE OF ACTION

**(BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS and DOES 1 through 50, inclusive)**

**BREACH OF EXPRESS WARRANTY**

85. Plaintiffs reallege and incorporate by reference each and every allegation contained in this Complaint as though fully set forth herein.

86. At all relevant times, Defendants designed, manufactured, formulated, tested, marketed, advertised, promoted, distributed, supplied, and sold feminine hygiene and intimate care products, including but not limited to tampons, sanitary pads, menstrual cups, feminine wipes, vaginal cleansing products, feminine washes, deodorizing sprays, menstrual underwear, and related products.

87. Through product labeling, packaging, advertising, promotional materials, websites, marketing campaigns, warranties, and other representations, Defendants expressly represented and warranted that their products were safe, effective, gentle, natural, organic, clean, pH balanced, dermatologist tested, gynecologist approved, suitable for intimate feminine use, and fit for their intended purpose.

88. Defendants further expressly represented and warranted that consumers could safely use the products on a regular and long-term basis without unreasonable risk of injury, illness, reproductive harm, hormonal disruption, or other adverse health consequences.

89. Plaintiffs saw, reviewed, relied upon, and were influenced by Defendants' representations, warranties, advertisements, labels, packaging, and marketing materials when purchasing and using the products at issue.

90. Plaintiffs reasonably relied upon Defendants' express warranties and representations in deciding to purchase and use Defendants' products and would not have purchased or used the products had the true facts concerning the products been disclosed.

PLAINTIFFS COMPLAINT

91. Plaintiffs are informed and believe, and thereon allege, that the products failed to conform to Defendants' express warranties because the products allegedly contained PFAS ("forever chemicals"), endocrine-disrupting chemicals, carcinogens, fragrances, preservatives, volatile organic compounds, heavy metals, and other harmful toxic substances that rendered the products unsafe and unfit for their represented purpose.

92. The products were not as represented by Defendants and did not possess the qualities, characteristics, safety, and benefits that Defendants expressly promised to consumers.

93. Defendants breached their express warranties by manufacturing, marketing, distributing, and selling products that allegedly exposed Plaintiffs to dangerous substances and unreasonable health risks while simultaneously representing the products as safe for feminine and intimate use.

94. As a direct and proximate result of Defendants' breaches of express warranty, Plaintiffs suffered injuries and damages including but not limited to endometriosis, adenomyosis, ovarian cysts, fibroids, polycystic ovary syndrome (PCOS), hormonal imbalance, pelvic inflammatory disease, chronic pelvic pain, severe menstrual pain, excessive bleeding, blood clots, anemia, fertility complications, miscarriage, pain during intercourse, emotional distress, anxiety, depression, medical expenses, lost income, loss of earning capacity, pain and suffering, and other economic and non-economic damages according to proof.

95. As a further direct and proximate result of Defendants' conduct, Plaintiffs have incurred and will continue to incur medical expenses, future treatment costs, future medical monitoring expenses, lost earnings, and other damages according to proof at trial.

96. Plaintiffs are entitled to recover all damages available under California law, including compensatory damages, consequential damages, incidental damages, costs of suit, interest, and such other relief as the Court deems just and proper.

## FIFTH CAUSE OF ACTION

### (BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS and DOES 1 through 50, inclusive)

### FRAUDULENT CONCEALMENT

97. Plaintiffs reallege and incorporate by reference each and every allegation contained in this Complaint as though fully set forth herein.

98. At all relevant times, Defendants possessed superior and exclusive knowledge regarding the design, formulation, chemical composition, testing, safety profile, and potential health risks associated with their feminine hygiene and intimate care products.

99. Plaintiffs are informed and believe, and thereon allege, that Defendants knew or reasonably should have known through internal testing, scientific studies, toxicological data, adverse event reports, consumer complaints, industry research, and other information within their possession that their products allegedly contained PFAS ("forever chemicals"), endocrine-disrupting chemicals, carcinogens, fragrances, preservatives, heavy metals, volatile organic compounds, and other harmful toxic substances capable of causing reproductive harm, gynecological injuries, hormonal disruption, fertility complications, chronic inflammation, chronic pain conditions, and other serious health consequences.

100. Despite possessing such knowledge, Defendants intentionally concealed, suppressed, omitted, failed to disclose, and/or misrepresented material facts concerning the safety of their products and the risks associated with prolonged and repeated exposure thereto.

101. Defendants had a duty to disclose such material facts because they possessed exclusive knowledge of information not known or reasonably available to Plaintiffs, actively concealed said information, and made partial representations regarding the safety and quality of their products while omitting material facts concerning known risks.

102. Rather than disclose the true nature of the products, Defendants marketed, advertised, promoted, labeled, and represented the products as safe, clean, natural, organic, gentle, pH-balanced, dermatologist-tested, gynecologist-approved, and appropriate for prolonged feminine and intimate use.

103. Plaintiffs reasonably relied upon Defendants' omissions, concealment, representations, advertising, packaging, labeling, warranties, and marketing materials and were unaware of the true risks allegedly associated with the products.

104. Had Plaintiffs known the true facts regarding the products and the alleged presence of toxic chemicals and associated health risks, Plaintiffs would not have purchased, used, or continued using Defendants' products.

105. Defendants intentionally concealed and suppressed material information with the intent to induce consumers, including Plaintiffs, to purchase and continue using their products and to maximize profits while avoiding consumer backlash, product recalls, regulatory scrutiny, and legal liability.

106.    As a direct and proximate result of Defendants' fraudulent concealment and suppression of material facts, Plaintiffs suffered severe injuries and damages including but not limited to reproductive injuries, endometriosis, adenomyosis, ovarian cysts, fibroids, PCOS, hormonal imbalance, pelvic inflammatory disease, chronic pelvic pain, excessive menstrual bleeding, blood clots, anemia, fertility complications, miscarriage, pain during intercourse, emotional distress, anxiety, depression, medical expenses, lost earnings, loss of earning capacity, pain and suffering, and other economic and non-economic damages according to proof.

107.    Defendants' conduct was intentional, willful, malicious, oppressive, fraudulent, and carried out with conscious disregard for the rights, health, and safety of Plaintiffs and the consuming public.

108.    Accordingly, Plaintiffs are entitled to recover punitive and exemplary damages in an amount sufficient to punish Defendants and deter similar misconduct in the future, in addition to all other damages permitted by law.

## SIXTH CAUSE OF ACTION

**(BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS and DOES 1 through 50, inclusive)**

**FRAUD**

109.    Plaintiffs reallege and incorporate by reference each and every allegation contained in this Complaint as though fully set forth herein.

110.    At all relevant times, Defendants made numerous representations, statements, advertisements, warranties, marketing claims, package labeling statements, and promotional materials regarding the safety, quality, effectiveness, and suitability of their feminine hygiene and intimate care products.

111.    Defendants represented to consumers, including Plaintiffs, that their products were safe, clean, natural, organic, gentle, pH-balanced, dermatologist-tested, gynecologist-approved, and appropriate for prolonged feminine and intimate use.

112.    Plaintiffs are informed and believe, and thereon allege, that such representations were false, misleading, and deceptive because Defendants knew or should have known that their products allegedly contained PFAS ("forever chemicals"), endocrine-disrupting chemicals, carcinogens, fragrances, preservatives, heavy metals, volatile organic

compounds, and other harmful toxic substances capable of causing serious bodily injury and reproductive harm.

113.	At the time such representations were made, Defendants knew the representations were false or acted with reckless disregard for their truth or falsity.

114.	Defendants made these representations with the intent to induce consumers, including Plaintiffs, to purchase and continue using their products and to generate substantial profits from the sale of said products.

115.	Plaintiffs reasonably relied upon Defendants' representations, advertising, labeling, warranties, marketing campaigns, and promotional materials when purchasing and using the products at issue.

116.	Plaintiffs would not have purchased or used Defendants' products, or would have paid substantially less for them, had they known the true facts concerning the products and the alleged risks associated therewith.

117.	Defendants' misrepresentations and omissions were material because a reasonable consumer would consider information regarding the presence of toxic chemicals and potential reproductive and health risks important when deciding whether to purchase and use feminine hygiene and intimate care products.

118.	As a direct and proximate result of Defendants' fraudulent conduct, false representations, misstatements, omissions, and deceit, Plaintiffs suffered substantial injuries and damages including but not limited to reproductive harm, endometriosis, adenomyosis, ovarian cysts, fibroids, PCOS, hormonal imbalance, pelvic inflammatory disease, chronic pelvic pain, severe menstrual pain, excessive bleeding, blood clots, anemia, fertility complications, miscarriage, pain during intercourse, emotional distress, anxiety, depression, medical expenses, lost income, loss of earning capacity, pain and suffering, and other economic and non-economic damages according to proof.

119.	Defendants' conduct was intentional, fraudulent, malicious, oppressive, and carried out with conscious disregard for the health and safety of consumers, thereby entitling Plaintiffs to an award of punitive and exemplary damages in an amount sufficient to punish Defendants and deter similar misconduct in the future.

120.	As a result of Defendants' fraud, Plaintiffs seek all damages available under California law, including compensatory damages, punitive damages, restitution, disgorgement, costs of suit, prejudgment interest, and such other relief as the Court deems just and proper.

PLAINTIFFS COMPLAINT

## SEVENTH CAUSE OF ACTION

## (BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS and DOES 1 through 50, inclusive)

## NEGLIGENT MISREPRESENTATION

121.     Plaintiffs reallege and incorporate by reference each and every allegation contained in this Complaint as though fully set forth herein.

122.     At all relevant times, Defendants designed, manufactured, tested, formulated, marketed, advertised, promoted, distributed, and sold feminine hygiene and intimate care products, including but not limited to tampons, sanitary pads, menstrual cups, feminine wipes, vaginal cleansing products, feminine washes, deodorizing sprays, menstrual underwear, and related products.

123.     Defendants represented through advertising, packaging, labeling, product descriptions, promotional materials, websites, and other communications that their products were safe, clean, natural, organic, gentle, suitable for intimate feminine use, and fit for their intended purpose.

124.     Plaintiffs are informed and believe, and thereon allege, that such representations were false, misleading, and made without reasonable grounds for believing them to be true because Defendants knew or should have known that their products allegedly contained PFAS ("forever chemicals"), endocrine-disrupting chemicals, carcinogens, fragrances, preservatives, volatile organic compounds, heavy metals, and other potentially harmful substances.

125.     Defendants had a duty to exercise reasonable care in obtaining and communicating accurate information regarding the safety, risks, and chemical composition of their products to consumers.

126.     Defendants breached that duty by negligently making false statements, omitting material facts, failing to conduct adequate testing, failing to disclose known or reasonably discoverable risks, and failing to provide accurate information regarding the safety of their products.

127.     Plaintiffs reasonably relied upon Defendants' representations, advertisements, warranties, marketing materials, labels, and omissions in deciding to purchase and use the products at issue.

128.     Plaintiffs had no reason to know that the products allegedly contained toxic substances or posed risks of reproductive harm, hormonal disruption, gynecological injury,

fertility complications, chronic pain conditions, inflammation, and other serious health consequences.

129.    Had Plaintiffs known the true facts concerning the products and the risks associated therewith, Plaintiffs would not have purchased, used, or continued using the products, or would have paid substantially less for them.

130.    As a direct and proximate result of Defendants' negligent misrepresentations and omissions, Plaintiffs suffered injuries and damages including but not limited to endometriosis, adenomyosis, ovarian cysts, fibroids, polycystic ovary syndrome (PCOS), hormonal imbalance, pelvic inflammatory disease, chronic pelvic pain, severe menstrual pain, excessive bleeding, blood clots, anemia, fertility complications, miscarriage, pain during intercourse, emotional distress, anxiety, depression, medical expenses, lost wages, loss of earning capacity, pain and suffering, and other economic and non-economic damages according to proof.

131.    As a further direct and proximate result of Defendants' conduct, Plaintiffs have incurred and will continue to incur medical expenses, future treatment costs, future medical monitoring expenses, lost income, and other damages according to proof at trial.

132.    Plaintiffs are entitled to recover all compensatory damages, consequential damages, costs, interest, and such other and further relief as the Court deems just and proper.

## EIGHTH CAUSE OF ACTION

**(BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS and DOES 1 through 50, inclusive)**

**NEGLIGENCE**

133.    Plaintiffs reallege and incorporate by reference each and every allegation contained in this Complaint as though fully set forth herein.

134.    At all relevant times, Defendants, and each of them, owed Plaintiffs and the general public a duty to exercise reasonable care in the design, research, development, testing, formulation, manufacture, inspection, labeling, marketing, advertising, promotion, distribution, supply, and sale of their feminine hygiene and intimate care products.

135.    Defendants further owed Plaintiffs a duty to adequately investigate, evaluate, monitor, disclose, and warn consumers of known or reasonably foreseeable risks associated with the use of their products.

136.    Plaintiffs are informed and believe, and thereon allege, that Defendants knew or reasonably should have known that their products allegedly contained PFAS ("forever

chemicals"), endocrine-disrupting chemicals, carcinogens, heavy metals, volatile organic compounds, fragrances, preservatives, and other toxic substances capable of causing reproductive harm, gynecological injuries, hormonal disruption, fertility complications, chronic inflammation, chronic pain conditions, and other serious health consequences.

137.     Defendants breached their duties of care by, among other things:

a. Failing to adequately test and evaluate the safety of their products;

b. Failing to conduct reasonable toxicological and long-term health studies;

c. Failing to investigate and monitor adverse health effects associated with their products;

d. Failing to disclose the presence of allegedly harmful chemicals and contaminants;

e. Failing to provide adequate warnings and instructions regarding foreseeable health risks;

f. Failing to utilize safer alternative ingredients, formulations, and manufacturing processes;

g. Misrepresenting the safety and quality of their products; and

h. Continuing to manufacture, market, advertise, distribute, and sell products despite knowledge of foreseeable risks to consumers.

138.     Defendants knew or reasonably should have foreseen that consumers, including Plaintiffs, would repeatedly use the products over many years in direct contact with highly sensitive and absorbent areas of the body.

139.     Plaintiffs used Defendants' products in a reasonably foreseeable manner and in accordance with the intended use of such products.

140.     As a direct and proximate result of Defendants' negligence, Plaintiffs suffered severe and permanent injuries and damages including but not limited to endometriosis, adenomyosis, ovarian cysts, fibroids, polycystic ovary syndrome (PCOS), hormonal imbalance, pelvic inflammatory disease, chronic pelvic pain, severe menstrual pain, excessive bleeding, blood clots, anemia, fertility complications, miscarriage, pain during intercourse, emotional distress, anxiety, depression, medical expenses, lost income, loss of earning capacity, pain and suffering, and other economic and non-economic damages according to proof.

141.    Plaintiffs have incurred and will continue to incur medical expenses, treatment costs, future medical monitoring expenses, lost wages, diminished earning capacity, and other damages according to proof at trial.

142.    As a direct and proximate result of Defendants' negligent acts and omissions, Plaintiffs have suffered and continue to suffer substantial damages in an amount to be proven at trial.

143.    Plaintiffs are informed and believe, and thereon allege, that Defendants acted with conscious disregard for consumer safety by placing profits above the health and well-being of consumers, thereby entitling Plaintiffs to seek punitive and exemplary damages as permitted by law.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, according to proof at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, ALL PLAINTIFFS ALASSANDRA FRANCO LOPEZ AND ET AL , AND ROES 1 THROUGH 50, pray for judgment against ALL  DEFENDANTS THE PROCTER & GAMBLE COMPANY AND ET AL ,  and DOES 1 through 50, inclusive, and each of them, as follows:

1.  For general damages (Non-Economic Damages)  according to proof;
2.  For special damages (economic damages) which include but not limited to past and future medical expenses, according to proof;
3.  For compensatory damages according to proof;
4.  For costs and all other injuries according to proof;
5.  For property damages and out-of-pocket losses incurred as a result of Plaintiffs' injuries;
6.  For punitive and exemplary damages in an amount sufficient to punish Defendants and deter similar misconduct in the future;
7.  For pre-judgment and post-judgment interest as allowed by law;
8.  For attorneys' fees, expert fees, litigation expenses, and costs of suit where authorized by law;
9.  For such other and further relief as the Court may deem just, proper, and equitable under the circumstances.

PLAINTIFFS COMPLAINT

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully Submitted,

DATED: <u>May 29, 2026</u>

LAW OFFICE OF ISAAC TOVEG, PLC

By: _/s/ ISAAC TOVEG____
ISAAC TOVEG, ESQ.
Attorneys for Plaintiffs

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER: 269729 | FOR COURT USE ONLY |
|---|---|---|

NAME: Isaac Toveg

FIRM NAME: Law Office Of Isaac Toveg PLC

STREET ADDRESS: 2600 W Olive Ave Suite 576

CITY: Burbank          STATE: CA     ZIP CODE: 91505

TELEPHONE NO.: 818-333-5202          FAX NO :

EMAIL ADDRESS: isaactoveg@aol.com

ATTORNEY FOR (name): Alassandra Franco Lopez, An Individual, and Et AL

**Electronically FILED by
Superior Court of California,
County of Los Angeles
6/05/2026 3:39 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By A. Villchis-David, Deputy Clerk**

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

STREET ADDRESS: 111 North Hill St

MAILING ADDRESS:

CITY AND ZIP CODE: Los Angeles 90012

BRANCH NAME: Stanely Mosk Courthouse

CASE NAME:
Alassandra Franco Lopez and Et AL vs The Procter & Gamble Company, and Et AL

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER: 26STCV17995 |
|---|---|---|
| [x] **Unlimited** (Amount demanded exceeds $35,000) | [ ] **Limited** (Amount demanded is $35,000 or less) | [ ] Counter  [ ] Joinder |
| | | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Asbestos**
[ ] Asbestos (04)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[x] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/Unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Employment Development Department (EDD)**
[ ] EDD decision review (48)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.404)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Comprehensive groundwater adjudication (47)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

Judicial Council of California, courts.ca.gov
Rev. January 1, 2026, Mandatory Form
Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740
Cal. Stds. Jud. Admin., std. 3.10

**Civil Case Cover Sheet**

CM-010, Page 1 of 3

→

CM-010

2.  Is this case complex under rule 3.400 of the California Rules of Court?    ☐ Yes    ☒ No

If the case is complex, mark the factors requiring exceptional judicial management:

a. ☐ Large number of separately represented parties

b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve

c. ☐ Substantial amount of documentary evidence

d. ☐ Large number of witnesses

e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court

f. ☐ Substantial postjudgment judicial supervision

3.  Remedies sought *(check all that apply):*

a. ☒ monetary

b. ☐ nonmonetary; declaratory or injunctive relief

c. ☒ punitive

4.  Number of causes of action *(specify):* 8

5.  Is this case a class action suit?    ☐ Yes    ☒ No

6.  If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 05/29/2026

Isaac Toveg
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

---

**NOTICE**

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.

- File this cover sheet in addition to any cover sheet required by local court rule.

- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.

- Unless this is a collections case under rule 3.740 of the California Rules of Court or a complex case, this cover sheet will be used for statistical purposes only.

---

### INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on pages 1 and 2. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 of the California Rules of Court is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $35,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

SEE PAGE 3 FOR INFORMATION PURPOSES ONLY.

---

Rev. January 1, 2026                    **Civil Case Cover Sheet**                    CM-010, Page 2 of 3



CM-010

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/
Wrongful Death
Uninsured Motorist (46) *(if the case involves
an uninsured motorist claim subject to
arbitration, check this item instead of Auto)*
**Asbestos**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/Wrongful Death
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death) Tort**
Product Liability *(not asbestos or toxic/
environmental)* (24)
Medical Malpractice (45)
Medical Malpractice–Physicians &
Surgeons
Other Professional Health Care
Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD (e.g.,
assault, vandalism)
Intentional Infliction of Emotional Distress
Negligent Infliction of Emotional Distress
Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest)
*(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice *(not
medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease Contract *(not
unlawful detainer or wrongful eviction)*
Contract/Warranty Breach–Seller Plaintiff
*(not fraud or negligence)*
Negligent Breach of Contract/Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book
accounts) (09)
Collections Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally
complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent
domain, landlord-tenant, or
foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs,
check this item; otherwise, report as
Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition re Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court Case
Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner
Appeals
**Employment Development Department (EDD)**
EDD Decision Review (48) *(if the case
involves an Employment Development
Department decision, check this item
instead of Wrongful Termination or Other
Employment)*

**Provisionally Complex Civil Litigation (Cal.
Rules of Court, rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Comprehensive Groundwater Adjudication
(47)
Insurance Coverage Claims *(arising from
provisionally complex case type listed
above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic
relations)*
Sister-State Judgment
Administrative Agency Award *(not unpaid
taxes)*
Petition/Certification of Entry of Judgment
on Unpaid Taxes
Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only Injunctive Relief
Only *(non-harassment)*
Mechanic's Lien
Other Commercial Complaint Case *(non-
tort/non-complex)*
Other Civil Complaint *(non-tort/non-
complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

Rev. January 1, 2026

**Civil Case Cover Sheet**

CM-010, Page 3 of 3

For your protection and privacy, please press the Clear
button after you have printed the form.

Print    Save    Clear

| SHORT TITLE | CASE NUMBER |
|---|---|
| Alassandra Franco Lopez and Et AL VS The Procter & Gamble Company, and Et AL | 26STCV17995 |

# CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION

## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Superior Court of Los Angeles County**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Courthouse Location (Column C) | |
|---|---|
| 1. Class Actions must be filed in the Stanley Mosk Courthouse, Central District. | 7. Location where petitioner resides. |
| 2. Permissive filing in Central District. | 8. Location wherein defendant/respondent functions wholly. |
| 3. Location where cause of action arose. | 9. Location where one or more of the parties reside. |
| 4. Location where bodily injury, death or damage occurred. | 10. Location of Labor Commissioner Office. |
| 5. Location where performance required, or defendant resides. | 11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection). |
| 6. Location of property or permanently garaged vehicle. | |

| | A<br>Civil Case Cover<br>Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable<br>Reasons (see<br>Step 3 above) |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ 2201 Motor Vehicle – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | Uninsured Motorist (46) | ☐ 4601 Uninsured Motorist – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| **Other Personal Injury/ Property Damage/ Wrongful Death** | Other Personal Injury/ Property Damage/ Wrongful Death (23) | ☐ 2301 Premise Liability (e.g., dangerous conditions of property, slip/trip and fall, dog attack, etc.) | 1, 4 |
| | | ☐ 2302 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, battery, vandalism, etc.) | 1, 4 |
| | | ☐ 2303 Intentional Infliction of Emotional Distress | 1, 4 |
| | | ☐ 2304 Other Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | | ☐ 2305 Elder/Dependent Adult Abuse/Claims Against Skilled Nursing Facility | 1, 4 |
| | | ☐ 2306 Intentional Conduct – Sexual Abuse Case (in any form) | 1, 4 |

| SHORT TITLE | CASE NUMBER |
|---|---|
| Alassandra Franco Lopez and Et AL VS The Procter & Gamble Company, and Et AL | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Contract** (Continued) | Other Contract (37) | ☐ 3701 Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ 3702 Tortious Interference | 1, 2, 3, 5 |
| | | ☐ 3703 Other Contract Dispute (not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/ Inverse Condemnation (14) | ☐ 1401 Eminent Domain/Condemnation<br>Number of Parcels _____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ 3301 Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ 2601 Mortgage Foreclosure | 2, 6 |
| | | ☐ 2602 Quiet Title | 2, 6 |
| | | ☐ 2603 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer – Commercial (31) | ☐ 3101 Unlawful Detainer – Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Residential (32) | ☐ 3201 Unlawful Detainer – Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Post Foreclosure (34) | ☐ 3401 Unlawful Detainer – Post Foreclosure | 2, 6, 11 |
| | Unlawful Detainer – Drugs (38) | ☐ 3801 Unlawful Detainer – Drugs | 2, 6, 11 |
| **Judicial Review** | Asset Forfeiture (05) | ☐ 0501 Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ 1101 Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ 0201 Writ – Administrative Mandamus | 2, 8 |
| | | ☐ 0202 Writ – Mandamus on Limited Court Case Matter | 2 |
| | | ☐ 0203 Writ – Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ 3901 Other Writ/Judicial Review | 2, 8 |
| | | ☐ 3902 Administrative Hearing | 2, 8 |
| | | ☐ 3903 Parking Appeal | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ 0301 Antitrust/Trade Regulation | 1, 2, 8 |
| | Asbestos (04) | ☐ 0401 Asbestos Property Damage | 1, 11 |
| | | ☐ 0402 Asbestos Personal Injury/Wrongful Death | 1, 11 |

SCLAC CIV 109 Rev. 04/26<br>For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION**

SCLAC Local Rule 2.3

| SHORT TITLE | CASE NUMBER |
|---|---|
| Alassandra Franco Lopez and Et AL VS The Procter & Gamble Company, and Et AL | |

| | **A**<br>Civil Case Cover Sheet Case Type | **B**<br>Type of Action<br>(check only one) | **C**<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Provisionally Complex Litigation** *(Continued)* | Construction Defect (10) | ☐ 1001 Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ 4001 Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ 2801 Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ 3001 Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ 4101 Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ 2001 Sister State Judgment | 2, 5, 11 |
| | | ☐ 2002 Abstract of Judgment | 2, 6 |
| | | ☐ 2004 Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ 2005 Petition/Certificate for Entry of Judgment Unpaid Tax | 2, 8 |
| | | ☐ 2006 Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ 2701 Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (not specified above) (42) | ☐ 4201 Declaratory Relief Only | 1, 2, 8 |
| | | ☐ 4202 Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ 4203 Other Commercial Complaint Case (non-tort/noncomplex) | 1, 2, 8 |
| | | ☐ 4204 Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ 2101 Partnership and Corporation Governance Case | 2, 8 |
| | Other Petitions (not specified above) (43) | ☐ 4301 Civil Harassment with Damages | 2, 3, 9 |
| | | ☐ 4302 Workplace Harassment with Damages | 2, 3, 9 |
| | | ☐ 4303 Elder/Dependent Adult Abuse Case with Damages | 2, 3, 9 |
| | | ☐ 4304 Election Contest | 2 |
| | | ☐ 4305 Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ 4306 Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ 4307 Other Civil Petition | 2, 9 |

SCLAC CIV 109 Rev. 04/26          **CIVIL CASE COVER SHEET ADDENDUM**          SCLAC Local Rule 2.3
For Mandatory Use                          **AND STATEMENT OF LOCATION**

| SHORT TITLE | CASE NUMBER |
|---|---|
| Alassandra Franco Lopez and Et AL VS The Procter & Gamble Company, and Et AL | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Other Personal Injury/ Property Damage/ Wrongful Death** | | ☐ 2307 Construction Accidents | 1, 4 |
| | | ☐ 2308 Landlord – Tenant Habitability (e.g., bed bugs, mold, etc.) | 1, 4 |
| | Product Liability (24) | ☒ 2401 Product Liability (not asbestos or toxic/ environmental) | 1, 4 |
| | | ☐ 2402 Product Liability – Song-Beverly Consumer Warranty Act (CA Civil Code §§1790-1795.8) (Lemon Law) | 1, 3, 5 |
| | Medical Malpractice (45) | ☐ 4501 Medical Malpractice – Physicians & Surgeons | 1, 4 |
| | | ☐ 4502 Other Professional Health Care Malpractice | 1, 4 |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ 0701 Other Commercial/Business Tort (not fraud or breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ 0801 Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ 1301 Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ 1601 Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ 2501 Legal Malpractice | 1, 2, 3 |
| | | ☐ 2502 Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ 3501 Other Non-Personal Injury/Property Damage Tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ 3601 Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ 1501 Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ 1502 Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract / Warranty (06) (not insurance) | ☐ 0601 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ 0602 Contract/Warranty Breach – Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ 0603 Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ 0604 Other Breach of Contract/Warranty (no fraud/ negligence) | 1, 2, 5 |
| | | ☐ 0605 Breach of Rental/Lease Contract (COVID-19 Rental Debt) | 2, 5 |
| | Collections (09) | ☐ 0901 Collections Case – Seller Plaintiff | 5, 6, 11 |
| | | ☐ 0902 Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ 0903 Collections Case – Purchased Debt (charged off consumer debt purchased on or after January 1, 2014) | 5, 6, 11 |
| | | ☐ 0904 Collections Case – COVID-19 Rental Debt | 5, 11 |
| | Insurance Coverage (18) | ☐ 1801 Insurance Coverage (not complex) | 1, 2, 5, 8 |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

SCLAC Local Rule 2.3

| SHORT TITLE | CASE NUMBER |
|---|---|
| Alassandra Franco Lopez and Et AL VS The Procter & Gamble Company, and Et AL | |

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address, which is the basis for the filing location including zip code. (No address required for class action cases.)

| REASON:<br>☐ 1. ☐ 2. ☐ 3. ■ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11 | | | ADDRESS:<br>607 N Hobart Blvd |
|---|---|---|---|
| CITY:<br>LOS ANGELES | STATE:<br>CA | ZIP CODE:<br>900 0 4 | |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the ___Central___ District of the Superior Court of California, County of Los Angeles [Code of Civ. Proc., 392 et seq., and SCLAC Local Rule 2.3(a)(1)(E)]

Dated: 05/29/2026 _____

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet Judicial Council form CM-010.
4. Civil Case Cover Sheet Addendum and Statement of Location form SCLAC CIV 109 (01/23).
5. Payment in full of the filing fee, unless there is a court order for waiver, partial or schedule payments.
6. A signed order appointing a Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court to issue a Summons.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the Summons and Complaint, or other initiating pleading in the case.



*Superior Court of California, County of Los Angeles*
**ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE**

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS MUST SERVE THIS ADR INFORMATION PACKAGE ON ANY NEW PARTIES NAMED TO THE ACTION WITH THE CROSS-COMPLAINT.**

**WHAT IS ADR?**
Alternative Dispute Resolution (ADR) helps people find solutions to their legal disputes without going to trial. The Court offers a variety of ADR resources and programs for various case types.

**TYPES OF ADR**

- **Negotiation.** Parties may talk with each other about resolving their case at any time. If the parties have attorneys, they will negotiate for their clients.

- **Mediation.** Mediation may be appropriate for parties who want to work out a solution but need help from a neutral third party. A mediator can help the parties reach a mutually acceptable resolution. Mediation may be appropriate when the parties have communication problems and/or strong emotions that interfere with resolution. Mediation may not be appropriate when the parties want a public trial, lack equal bargaining power, or have a history of physical or emotional abuse.

- **Arbitration.** Less formal than a trial, parties present evidence and arguments to an arbitrator who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision.

- **Settlement Conferences.** A judge or qualified settlement officer assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Mandatory settlement conferences may be ordered by a judicial officer. In some cases, voluntary settlement conferences may be requested by the parties.

**ADVANTAGES OF ADR**

- **Save time and money.** Utilizing ADR methods is often faster than going to trial and parties can save on court costs, attorney's fees, and other charges.
- **Reduce stress and protect privacy.** ADR is conducted outside of a courtroom setting and does not involve a public trial.
- **Help parties maintain control.** For many types of ADR, parties may choose their ADR process and provider.

**DISADVANTAGES OF ADR**

- **Costs.** If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial.** ADR does not provide a public trial or decision by a judge or jury.

**WEBSITE RESOURCES FOR ADR**

- **Los Angeles Superior Court ADR website:** www.lacourt.org/ADR
- **California Courts ADR website:** www.courts.ca.gov/programs-adr.htm

LASC CIV 271 Rev. 12/25
For Mandatory Use

**Los Angeles Superior Court ADR Programs for Unlimited Civil (cases valued over $35,000)**

Litigants should closely review the requirements for each program and the types of cases served.

- **Civil Mediation Vendor Resource List.** Litigants in unlimited civil cases may use the Civil Mediation Vendor Resource List to arrange voluntary mediations without Court referral or involvement. The Resource List includes organizations that have been selected through a formal process that have agreed to provide a limited number of low-cost or no-cost mediation sessions with attorney mediators or retired judges. Organizations may accept or decline cases at their discretion. Mediations are scheduled directly with these organizations and are most often conducted through videoconferencing. The organizations on the Resource List target active civil cases valued between $50,000-$250,000, though cases outside this range may be considered. *For more information and to view the list of vendors and their contact information, download the Resource List Flyer and FAQ Sheet at www.lacourt.org/ADR/programs.html.*

  **RESOURCE LIST DISCLAIMER:** The Court provides this list as a public service. The Court does not endorse, recommend, or make any warranty as to the qualifications or competency of any provider on this list. Inclusion on this list is based on the representations of the provider. The Court assumes no responsibility or liability of any kind for any act or omission of any provider on this list.

- **Mediation Volunteer Panel (MVP).** Unlimited civil cases referred by judicial officers to the Court's Mediation Volunteer Panel (MVP) are eligible for three hours of virtual mediation at no cost with a qualified mediator from the MVP. Through this program, mediators volunteer preparation time and three hours of mediation at no charge. If the parties agree to continue the mediation after three hours, the mediator may charge their market hourly rate. When a case is referred to the MVP, the Court's ADR Office will provide information and instructions to the parties. The Notice directs parties to meet and confer to select a mediator from the MVP or they may request that the ADR Office assign them a mediator. The assigned MVP mediator will coordinate the mediation with the parties. *For more information or to view MVP mediator profiles, visit the Court's ADR webpage at www.lacourt.org/ADR or email ADRCivil@lacourt.org.*

- **Mediation Center of Los Angeles (MCLA) Referral Program.** The Court may refer unlimited civil cases to mediation through a formal contract with the Mediation Center of Los Angeles (MCLA), a nonprofit organization that manages a panel of highly qualified mediators. Cases must be referred by a judicial officer or the Court's ADR Office. The Court's ADR Office will provide the parties with information for submitting the case intake form for this program. MCLA will assign a mediator based on the type of case presented and the availability of the mediator to complete the mediation in an appropriate time frame. MCLA has a designated fee schedule for this program. *For more information, contact the Court's ADR Office at ADRCivil@lacourt.org.*

- **Resolve Law LA (RLLA) Virtual Mandatory Settlement Conferences (MSC).** Resolve Law LA provides three-hour virtual Mandatory Settlement Conferences at no cost for personal injury and non-complex employment cases. Cases must be ordered into the program by a judge pursuant to applicable Standing Orders issued by the Court and must complete the program's online registration process. The program leverages the talent of attorney mediators with at least 10 years of litigation experience who volunteer as settlement officers. Each MSC includes two settlement officers, one each from the plaintiff and defense bars. Resolve Law LA is a joint effort of the Court, Consumer Attorneys Association of Los Angeles County (CAALA), Association of Southern California Defense Counsel (ASCDC), Los Angeles Chapter of the American Board of Trial Advocates (LA-ABOTA), Beverly Hills Bar Foundation (BHBF), California Employment Lawyers Association (CELA), and Los Angeles County Bar Association (LACBA). *For more information, visit https://resolvelawla.com.*

- **Judicial Mandatory Settlement Conferences (MSCs).** Judicial MSCs are ordered by the Court for unlimited civil cases and may be held close to the trial date or on the day of trial. The parties and their attorneys meet with a judicial officer who does not make a decision, but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For more information, visit https://www.lacourt.org/division/civil/CI0047.aspx.

**<u>Los Angeles Superior Court ADR Programs for Limited Civil (cases valued below $35,000)</u>**
Litigants should closely review the requirements for each program and the types of cases served.

- **Dispute Resolution Program Act (DRPA) Day-of-Hearing Mediation.** Through the Dispute Resolution Program Act (DRPA), the Court works with county-funded agencies, including the Los Angeles County Department of Consumer & Business Affairs (DCBA) and the Center for Conflict Resolution (CCR), to provide voluntary day-of-hearing mediation services for small claims, unlawful detainer, limited civil, and civil harassment matters. DCBA and CCR staff and trained volunteers serve as mediators, primarily for self-represented litigants. There is no charge to litigants. *For more information, visit https://dcba.lacounty.gov/countywidedrp.*

- **Temporary Judge Unlawful Detainer Mandatory Settlement Conference Pilot Program.** Temporary judges who have been trained as settlement officers are deployed by the Court to designated unlawful detainer court locations one day each week to facilitate settlement of unlawful detainer cases on the day of trial. For this program, cases may be ordered to participate in a Mandatory Settlement Conference (MSC) by judicial officers at Stanley Mosk, Long Beach, Compton, or Santa Monica. Settlement rooms and forms are available for use on the designated day at each courthouse location. There is no charge to litigants for the MSC. *For more information, contact the Court's ADR Office at ADRCivil@lacourt.org.*

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:
Stanley Mosk Courthouse
111 North Hill Street, Los Angeles, CA 90012

PLAINTIFF:
Alassandra Franco Lopez, et al.

DEFENDANT:
The Procter & Gamble Company, et al.

**NOTICE OF CASE MANAGEMENT CONFERENCE**

Reserved for Clerk's File Stamp

**FILED**
Superior Court of California
County of Los Angeles

06/10/2026

David W. Slayton, Executive Officer / Clerk of Court

By: _____ R. Manzo _____ Deputy

CASE NUMBER:
26STCV17995

TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled at the courthouse address shown above on:

Date: 09/08/2026    Time: 8:30 AM    Dept.: 512
DEPARTMENT 512 DOES NOT ACCEPT CPURTESY COPIES

NOTICE TO DEFENDANT:    THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE DEFENDANT FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.

Pursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least 15 calendar days prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code, § 68600 et seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions, pursuant to LASC Local Rule 3.37, Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.360 and 583.410, Government Code section 68608, subdivision (b), and California Rules of Court, rule 2.2 et seq.

Dated: 06/10/2026

Judicial Officer

Karine Mkrtchyan / Judge

**CERTIFICATE OF SERVICE**

I, the below named Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named below:

☐ by depositing in the United States mail at the courthouse in _____, California, one copy of the original filed herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid.

☐ by personally giving the party notice upon filing of the complaint.

David W. Slayton, Executive Officer / Clerk of Court

Dated: 06/10/2026

By R. Manzo _____
Deputy Clerk

LASC LACIV 132 Rev. 01/23
For Optional Use

# NOTICE OF
# CASE MANAGEMENT CONFERENCE

Cal. Rules of Court, rules 3.720-3.730
LASC Local Rules, Chapter 7KUHH

| | FOR COURT USE ONLY |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF LOS ANGELES** | |
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street,  Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>06/10/2026<br>David W. Slayton, Executive Officer / Clerk of Court<br>By: _____ R. Manzo _____ Deputy |
| PLAINTIFF(S)/PETITIONER(S):<br>Alassandra Franco Lopez, et al. | |
| DEFENDANT(S)/RESPONDENT(S):<br>The Procter & Gamble Company, et al. | |
| **CLERK'S CERTIFICATE OF SERVICE**<br>**BY ELECTRONIC SERVICE** | CASE NUMBER:<br>26STCV17995 |

I, David W. Slayton, Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein and that on this date I served the

**Notice of Case Management Conference of 06/10/2026**

upon each party or counsel of record in the above entitled action by electronically serving to the party or parties at the electronic address as listed below:

**"Toveg, Isaac" <Isaactoveg@aol.com>**

The electronic transmission originated from the Superior Court of California, County of Los Angeles email address <u>eService-DoNotReply@lacourt.org</u> at the <u>Stanley Mosk Courthouse</u>, <u>111 North Hill Street</u>, <u>Los Angeles, CA 90012</u>.

Dated: <u>06/10/2026</u>

David W. Slayton, Executive Officer / Clerk of Court

By:  <u>R. Manzo</u>

Deputy Clerk

**Page 1 of 1**

**CLERK'S CERTIFICATE OF SERVICE BY ELECTRONIC SERVICE**

LASC CIV 310 NEW 03/25
For Mandatory Use

Code of Civil Procedure § 1013b(4)